UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCIANO FARMS, LLC, et al., | No. 2:13-CV-02116-KJM-AC |
| Plaintiffs, | |
| v. | ORDER |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

         The United States Forest Service ("USFS") moves to dismiss several claims brought by Luciano Farms, LLC and Robert Luciano ("plaintiffs"). Mot. to Dismiss ("MTD") at 2, ECF No. 18-1. The court heard argument on January 31, 2014, with Richard Harry Hart appearing for plaintiffs and David Gehlert appearing for the USFS.

         For the reasons below, the court GRANTS IN PART and DENIES IN PART the motion. The first and second claims are dismissed entirely, and the fifth claim is dismissed in part. The remaining claims may proceed.

I.      BACKGROUND

         At issue are the right-of-way easements used to convey water across USFS land to plaintiffs' property. The relevant facts, as recounted in the complaint, are as follows.

/////

1

Plaintiffs' predecessor in interest, Ezra Culver, began occupying the pertinent property[1] in 1874 and filed a water-rights claim in 1875. Compl. ¶¶ 73–74, ECF No. 2. He claimed two hundred miner's inches of water from Wash Creek to be conducted through ditches of sufficient size to carry the water at a slope of two inches, diverting from a point on or near the property. *Id.* ¶ 74. Culver completed construction of the ditches in 1875, and they have been in continuous use since. *Id.* ¶ 77. In 1882, Culver received a Homestead Patent for the property. *Id.* ¶ 73. On the basis of the above, the California State Water Resources Control Board recognizes the diversion and ditches, *id.* ¶ 79, and plaintiffs claim rights-of-way under the Mining Act of July 26, 1866 ("1866 Act"), 43 U.S.C. § 661 (repealed 1976), *id.* ¶¶ 30–53, and the Act of March 3, 1891 ("1891 Act"), 43 U.S.C. §§ 946–49 (repealed in part 1976), *id.* ¶¶ 197–198.[2] Plumas National Forest, which includes the servient tenement over which the ditches run, was established in 1905. *Id.* ¶ 81.

Plaintiffs purchased the property in 1995. *Id.* ¶ 84. In 1997, a flood destroyed part of plaintiffs' lower ditch. *Id.* ¶ 87. To continue watering the property, plaintiffs connected the undamaged upper ditch to the undamaged portion of the lower ditch by installing a new ditch section paralleling the damaged portion. *Id.* Since 2010, the USFS has taken the position that plaintiffs, under threat of prosecution, must obtain a special use permit for the ditches and verification of their water rights by the California Division of Water Rights. *Id.* ¶¶ 91, 186. The agency articulated this position in official correspondence—at least two letters—from the agency to plaintiff Robert Luciano. MTD Ex. 1, Attachments A, B. The USFS has inspected
/////

---

[1] The property, identified as Lot 2 of the NE ¼ of Section 1, T21N, R12E, MDB&M, has been the subject of another suit in this district, *Luciano v. United States, et al.*, No. 11-1831.

[2] The 1866 and 1891 Acts were repealed by the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701–84. However, FLPMA preserved rights acquired before October 21, 1976. *Id.* § 1769 ("[N]othing in this Act . . . shall be construed as termination of any valid . . . right-of-way or other land use right or authorization existing on the date of approval of this Act.").

the ditches on five occasions, twice with the participation of plaintiff Robert Luciano, without resolution. *Id.* ¶ 184.

Plaintiffs filed suit on October 15, 2013, asserting six claims: (1) violation of the National Forest Management Act; (2) violation of the National Environmental Policy Act; (3) violation of the Fifth Amendment and procedural due process; (4) violation of the Fifth Amendment and substantive due process; (5) to quiet title of the ditch right-of-way easements; and (6) for a declaratory judgment on the parties' respective rights and duties concerning the ditch right-of-way easements. *Id.* ¶¶ 98–217. In the instant motion, the USFS seeks to dismiss the first four claims entirely and the fifth "in so far as it claims (1) a right-of-way under the Act of 1891 and (2) that the scope of its alleged right-of-way includes the right to conduct 'routine maintenance' within the physical bounds of the right-of-way without any review by the [USFS]." MTD at 2.

II.      STANDARDS

   A. Rule 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for lack of subject-matter jurisdiction.[3] In doing so, a party may rely on factual or, as here, facial bases. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the complaint is challenged as failing to establish federal jurisdiction, even assuming all the allegations are true and construing the complaint in the light most favorable to the plaintiff. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

   B. Rule 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." Dismissal is proper where "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted). Although a complaint need contain only "a short and plain statement of the claim

---

[3] Even without such a motion, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), it "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]," "'labels and conclusions' [and] 'formulaic recitation[s] of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In doing so, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987) (citation omitted). This rule does not, however, apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted), *quoted in Twombly*, 550 U.S. at 555, or to "allegations that contradict matters properly subject to judicial notice," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

III.   ANALYSIS

    A.  Rule 12(b)(1): Jurisdiction

"Before final agency action has occurred, . . . a federal court lacks subject matter jurisdiction to hear [an Administrative Procedure Act ("APA")] claim." *Rattlesnake Coalition v. U.S. EPA*, 509 F.3d 1095, 1105 (9th Cir. 2007). "The APA applies to waive sovereign immunity only after final agency action." *Id.* at 1104–05 (citing 5 U.S.C. § 704). Where agency inaction is challenged, "'plaintiff [must] assert[] that an agency failed to take a *discrete* action that it is *required to take*.'" *Gros Ventre Tribe v. United States*, 469 F.3d 801, 814 (9th Cir. 2006) (emphases in original) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)). In such cases, the reviewing court may "compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1).

/////

4

1. First Claim: Violations of the National Forest Management Act and the Healthy Forest Restoration Act

The first claim asserts violations of the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1601–1614, and the Healthy Forest Restoration Act ("HFRA"), 16 U.S.C. §§ 6501–6591, because the agency has "fail[ed] to address the high fire hazard" and "implement a hazardous fuel reduction project in the wildland-urban interface area on the federal land adjacent to" plaintiffs' property. Compl. ¶¶ 116, 121. The USFS argues the claim must be dismissed for want of subject-matter jurisdiction because the actions it allegedly failed to take are neither discrete nor required. MTD at 9. Instead, the USFS insists, both the NFMA and the HFRA permit the agency discretion in deciding when and how to act. *Id.* at 9–11. Plaintiffs respond that the NFMA and HFRA require the agency to undertake particular fire-safety precautions at statutorily dictated times and places. Defs.' Opp'n to MTD ("Opp'n") at 9, ECF No. 19. Further, they contend, even actions committed to agency discretion may be subject to judicial review where the agency has abused its discretion. *Id.* at 9–11. Plaintiffs request leave to separately brief the issue of abuse of discretion. *Id.* at 11. That request is denied, as explained below.

"The APA authorizes suit by '[a] person suffering legal wrong because of an agency action,'" which is statutorily defined to include "failure to act." *Norton*, 542 U.S. at 61–62 (alteration in original) (citing 5 U.S.C. §§ 702, 706(1)). In such instances, "'[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. § 706(1)).

Failures to act, however, are "not always" "remediable under the APA." *Id.* at 61. In "considering [the] limits the APA places upon judicial review of agency inaction," the Supreme Court has held that § 706(1) "insist[s] upon an 'agency action,' . . . as the action to be compelled." *Id.* at 61–62 (A "'failure to act' is . . . properly understood as a failure to take an *agency action* . . . ." (emphasis in original)). Thus, judicial review of "a 'failure to act' is . . . limited . . . to a *discrete* action" that is "legally *required*." *Id.* at 63 (emphases in original). "General deficiencies in compliance [with a statute or regulation] . . . lack the specificity requisite for agency action." *Id.* at 66.

5

The NFMA requires the agency to "develop, maintain, and, as appropriate, revise land and resource management plans for units of the National Forest System . . . ." 16 U.S.C. § 1604(a). However, such plans "do not command anyone to do anything or to refrain from doing anything; . . . they create no legal rights or obligations." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). As such, there is no "legally *required*" action under the NFMA or the applicable forest plan that the agency has failed to take. *Norton*, 542 U.S. at 63 (emphasis in original).

The HFRA was enacted to, *inter alia*, "reduce wildfire risk to communities, municipal water supplies, and other at-risk Federal land . . . ." 16 U.S.C. § 6501(1). It requires the agency to "implement authorized hazardous fuel reduction projects, consistent with the Implementation Plan, on . . . Federal land in wildland-urban interface areas." 16 U.S.C. § 6512(a)(1). This is to be done "[a]s soon as practicable." *Id.* § 6512(a). The statute defines "authorized hazardous fuel reduction projects" as "[m]ethods for retaking hazardous fuels including prescribed fire, wildland fire use, and various mechanical methods such as crushing, tractor and hand piling, tree removal . . . and pruning. [The projects] are selected on a site-specific case and are ecologically appropriate and cost-effective." *See Decker v. U.S. Forest Serv.*, 780 F. Supp. 2d 1170, 1172 (D. Colo. 2011) (record citation omitted).

Under the HFRA, the agency may exercise discretion in deciding both how and when to act. Although the statute permits several discrete actions, no particular discrete action is required. *See id.*; 16 U.S.C. § 6501 *ff.* Rather, in light of the expansive definition of "authorized hazardous fuel reduction projects," the HFRA is "mandatory as to the object to be achieved, but . . . leaves . . . a great deal of discretion in deciding how to achieve it." *See Norton*, 542 U.S. at 66. Similarly, the agency may exercise discretion in deciding when to act. Interpreting "practicable," the Ninth Circuit has held such a determination to be "left to the agency's discretion." *Ala. Ctr. for Env't v. Browner*, 20 F.3d 981, 987 (9th Cir. 1994) (citation omitted); *see also Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 805 (9th Cir. 1980) (holding Clean Water Act's best practicable technology standard permits agency "broad discretion").

/////

Finally, plaintiffs' reliance on § 706 is misplaced. The section indeed states, in pertinent part: "the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed; and . . . hold unlawful and set aside agency action, findings and conclusions found to be . . . an abuse of discretion . . . ." 5 U.S.C. § 706 (1)–(2)(A). However, it does not grant judicial review of all actions deemed an abuse of discretion; it sets abuse of discretion as the standard of review once agency action or inaction is properly before the court. *See id.*; *see also Norton*, 542 U.S. at 64–65.

As the court lacks jurisdiction to review the complained-of inaction, the first claim is dismissed. Further, finding additional briefing unnecessary, the court denies leave to file additional briefing on abuse of discretion.

        2. <u>Second Claim: Violation of the National Environmental Protection Act</u>

The second claim asserts a violation of the National Environmental Protection Act ("NEPA"), 42 U.S.C. §§ 4331–4370(h), because the "cumulative effects" of the agency's "decision to ignore the severe fire hazard" and "the proposed elimination of Plaintiffs' diversion and ditch right-of-way easements" constitute major federal action necessitating, at the least, an environmental assessment ("EA"). Compl. ¶¶ 145–47, 150–52. The USFS argues the claim must be dismissed because the NEPA does not apply to inaction within the agency's discretion. MTD at 11. Plaintiffs take a contrary position, asserting agency discretion does not shield a decision from judicial review. Opp'n at 12.

Under the NEPA, agencies are to prepare an environmental impact statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(C). Major federal actions "include the circumstance where the responsible officials fail to act and that failure to act is reviewable by courts . . . under the [APA] . . . ." 40 C.F.R. § 1508.18. Where it is unclear whether an EIS is required, agencies are to prepare an EA to determine the necessity of an EIS. *Id.* § 1501.4.

As already discussed, judicial review of a failure to act is limited to a discrete action that is legally required. As analyzed above, the agency's alleged violations of the NFMA and HFRA are not subject to review. Thus, there is no question whether an EIS is

7

required. It is not. *Id.* § 1508.18. To the extent the second claim is predicated on the first, it is dismissed.

Plaintiffs' second basis for this claim—"the proposed elimination of Plaintiffs' diversion and ditch right-of-way easements," Compl. ¶ 146—is equally unavailing, although for a different reason. Without addressing whether such elimination constitutes "major federal action," the court finds as a threshold matter that there has been no "final agency action" in this regard. Plaintiffs do not assert that the agency has, in fact, eliminated their easements. Rather, by their own words, they allege there has been, at most, a "proposed elimination," *id.*, and conceded at hearing that they "don't really know what the government's final position is going to be," Hr'g Tr. at 6:9–10, ECF No. 36. A "final agency action," however, "must not be of a merely tentative or interlocutory nature," and, further, must result in the determination of legal rights or obligations "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation and internal quotation marks omitted). The "proposed elimination" does not meet either requirement and is thus not a "final agency action." The court is without jurisdiction to review the action on this basis. *Rattlesnake Coalition*, 509 F.3d at 1105.

The second claim is dismissed.

3. Third & Fourth Claims: Violations of the Fifth Amendment & Due Process

The third and fourth claims allege violations of the Fifth Amendment and both substantive and procedural due process based on the agency's "failure to acknowledge and respect [plaintiffs'] 1866 Act and 1891 Act ditch right-of-way easements" and "threats of prosecution for trespass." Compl. ¶¶ 162–163. The USFS argues both claims must be dismissed because there has been no "final agency action," and the court therefore lacks jurisdiction. MTD at 12–14. Alternatively, the agency contends plaintiffs have failed to administratively exhaust the claims. *Id.* at 13–14. Plaintiffs again argue to the contrary, claiming both final agency action and administrative exhaustion. Opp'n at 13–15.

/////

The parties agree a "final agency action" must: (1) "mark the consummation of the agency's decisionmaking process"; and (2) "be [an action] by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78 (citations and internal quotation marks omitted). However, they disagree whether the agency's letters meet these requirements. The letters state in pertinent part that until plaintiffs have "verified [the water rights with the] California Division of Water Rights" and received "written authorization, via a Special Use Permit," the agency "consider[s the ditches] to be in trespass." MTD Ex. 1, Attachments A, B, ECF No. 18-2.

The court first finds that the agency's letters "mark the consummation of the agency's decisionmaking process . . . ." *Bennett*, 520 U.S. at 178 (citation and internal quotation marks omitted). Although the agency has made no final determination regarding the outcome of any application for a special use permit, the agency has decided, definitively, that plaintiffs are subject to the process and must verify their water rights. MTD Ex. 1, Attachments A, B. It is these determinations that plaintiffs challenge. Further, the USFS conceded at argument that the decisions in the letters "are not appealable administratively . . . ." Hr'g Tr. at 14:8–9.[4] Thus, the letters are "devoid of any suggestion [they] might be subject to revision or further agency consideration or . . . modification" and constitute the USFS's "assert[tion of] its ultimate administrative position" on these issues. *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591–92 (9th Cir. 2008) (citations and internal quotation marks omitted).

The court next finds that the agency's letters also constitute an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (citation and internal quotation marks omitted). By their plain language, the letters impose two obligations: (1) "[plaintiffs'] water rights . . . need to be

---

[4] This concession renders the agency's alternative argument of failure to exhaust administrative remedies waived. *Cf. Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) ("[S]tatements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court." (emphasis in original)).

9

verified by the California Division of Water Rights," MTD Ex. 1, Attachment A; and (2) "[plaintiffs] need to apply for a Special Use Permit." MTD Ex. 1, Attachment B. That the USFS "consider[s plaintiffs' ditches] to be in trespass" does not articulate a legal consequence because the agency has no power to unilaterally declare trespass. However, as the court finds "that rights or obligations have been determined" by the letters, this is sufficient to satisfy the requirement of "final agency action." *See Bennett*, 520 U.S. at 177–78.

*City of San Diego v. Whitman* is distinguishable. 242 F.3d 1097, 1098 (9th Cir. 2001). Although the USFS correctly notes that the *Whitman* court held that the agency letter was not a final agency action, there are important factual differences when compared to the instant case. In *Whitman,* San Diego challenged whether it was subject to certain heightened permitting requirements but did not dispute whether it was subject to the permitting process. *Id.* at 1098–99. The *Whitman* court then found that the letter was not the "consummation of the agency's decision-making process" because the City of San Diego had not availed itself of the available administrative appeal process as to the challenged decision. *Id.* at 1101 (citation and internal quotation marks omitted) ("[A]ppeal to the Environmental Appeals Board . . . [is] a prerequisite to review by this court."). Here, however, plaintiffs challenge whether their water rights are subject to verification by the California Division of Water Rights and whether they are subject to permitting at all. These decisions, the USFS concedes, "are not appealable administratively . . . ." Hr'g Tr. at 14:8–9.[5]

The *Whitman* court also found that the letter there did not "impose an obligation, deny a right or fix some legal relationship" because it "simply respond[ed] to the City's request for 'assistance' . . . [and] only 'encourage[d]'" compliance with the relevant statute. 242 F.2d at 1102. Again, however, the instant facts are different: plaintiffs did not "request . . . assistance," and the USFS letter did not merely "encourage[]" compliance. Instead, the agency

---

[5] The USFS also stated at argument that the letters "do not represent final agency action." Hr'g Tr. at 14:9–10. However, though relevant, "an agency's own characterization of its action as non-final is not necessarily determinative . . . ." *Whitman*, 242 F.3d at 1101 n.6 (citation omitted).

10

instructed plaintiffs that their "water rights . . . need[ed] to be verified by the California Division of Water Rights" and that they "need[ed] to apply for a Special Use Permit." MTD Ex. 1, Attachments A, B. Because these determinations are within the ambit of agency authority, the USFS can and has "impose[d] an obligation" or "den[ied] a right." *Whitman*, 242 F.2d at 1102.

The third and fourth claims are properly before the court and may proceed.

B. Rule 12(b)(6): Failure to State a Claim

1. Fifth Claim: Quiet Title

In the fifth claim, plaintiffs seek to quiet title of the ditch right-of-way easements. Compl. ¶¶ 194–211. The USFS moves for partial dismissal of the claim "in so far as it asserts (1) a right-of-way pursuant to the 1891 Act and (2) that the scope of Plaintiff's claimed right-of-way is sufficient to preclude the [USFS] from reviewing uses of [USFS] lands which Plaintiff claims are routine maintenance within the physical bounds of such a right-of-way." MTD at 14–15. Plaintiffs oppose on the grounds that they have "vested rights under the 1891 Act" and the USFS's cited regulations "do not confer the authority . . . to regulate 1866 and 1891 Act ditch rights-of-way . . . in the manner that [the USFS] claim[s]." Opp'n at 15–16.

a. 1891 Act Claim

Under 28 U.S.C. § 2409a, plaintiffs seek to quiet title of the right-of-way easements conferred by the 1866 and 1891 Acts. Compl. ¶¶ 197–198. Defendants move for dismissal of plaintiffs' 1891 Act claim, arguing "the statute was not self-executing" and the property right "vested only 'upon approval of a map by the Secretary of the Interior.'" MTD at 15 (quoting *W. Watersheds Project v. Matejko*, 468 F.3d 1099, 1103 (9th Cir. 2006)). In response, plaintiffs aver that "'the actual construction of the ditch, otherwise meeting all other criteria of the [1891] Act, serve[d] as an alternative to the requirement for a map subject to approval by the Secretary.'" Opp'n at 15 (quoting *Roth v. United States*, 326 F. Supp. 2d 1163, 1173–74 (D. Mont. 2003)).

/////

11

The 1891 Act granted "right of way [easements] through the public lands . . . of the United States," 43 U.S.C. § 946, if an individual "file[d] with the Secretary of the Interior, and with the officer . . . of the land office where said land is located, a map of the line of such . . . ditch . . . ," *id.* § 948.  By the statute's plain language, the statute "provided for a vested federal right-of-way . . . upon approval of a map by the Secretary of the Interior." *W. Watersheds Project*, 468 F.3d at 1103 (citing *Utah Power & Light Co. v. United States*, 243 U.S. 389, 406–07 (1917)).  "[R]ights-of-way [under the 1891 Act thus] d[id] not vest until the Secretary ha[d], in accordance with reasonable regulations, approved the prospective grantee's application." *Grindstone Butte Project v. Kleppe*, 638 F.2d 100, 102 (9th Cir. 1981) (citing *U.S. ex rel. Sierra Land & Water Co. v. Ickes*, 84 F.2d 228, 231 (D.C. Cir. 1936)).

As plaintiffs do not here allege that they or their predecessors in interest ever filed or received approval of such a map, they do not advance a "cognizable legal theory," and thus fail to state a claim. *Balistreri*, 901 F.2d at 699.  The fifth claim is dismissed insofar as derived from the 1891 Act.  The court notes, however, that rights conferred under the 1891 Act are "essentially similar" to those conferred under the 1866 Act, *Grindstone Butte Project*, 683 F.2d at 103, and dismisses the 1891 Act claim only to the extent it is not coextensive with the 1866 Act claim.

b.  <u>Regular Maintenance Activities</u>

Plaintiffs also seek to quiet title concerning their "right to conduct routine maintenance on [the] ditches within [the] . . . rights-of-way without first obtaining a permit from the federal government."  Compl. ¶ 200.  The USFS argues partial dismissal is warranted because agency "regulations require review of *any* proposed use of [USFS] lands for maintenance of a ditch."  MTD at 15 (emphasis in original) (citing 36 C.F.R. § 251.50(a), (e)).  The agency concedes "for purposes of [the] motion . . . that [plaintiffs] have an 1866 Act right" to conduct routine maintenance, Hr'g Tr. at 16:18–19, but insist they must still submit a proposal for USFS review, MTD at 15–16.  Characterizing the agency's argument as "incorrect[]," plaintiffs posit that "the extent to which the USFS may regulate . . . [the] right-of-way [easements] is dependent, in part, upon the nature and scope of Plaintiff's right and interest

received with his right-of-way grant under the 1866 . . . Act[],ptay" and "the referenced regulations simply do not confer the authority to the USFS to regulate 1866 . . . Act[] ditch rights-of-way . . . in the manner that [the USFS] claim[s]." Opp'n at 15–16.

In light of its conclusions above, the court considers only the maintenance rights conferred by the 1866 Act. The 1866 Act provides in pertinent part:

> Whenever . . . rights to the use of water . . . have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same . . . . All . . . preemption . . . shall be subject to any vested and accrued water rights, or rights to ditches . . . used in connection with such water rights, as may have been acquired under or recognized by this section.

43 U.S.C. § 661. This provision represents a "'voluntary *recognition of a pre-existing right of possession*, constituting a valid claim to its continued use, [rather] than the establishment of a new one.'" *Hage v. United States*, 51 Fed. Cl. 570, 583 (2002) (alteration and emphasis in original) (quoting *Broder v. Natoma Water & Mining Co.*, 101 U.S. 274, 276 (1879)). The USFS has not disputed plaintiffs' citations of "local" California authority "recognizing that the grant of an easement carries with it certain secondary easements essential to its enjoyment, such as the right to make repairs, renewals, and replacements . . . ." Opp'n at 18 (citations and internal quotation marks omitted). *See also San Joaquin & Kings River Canal & Irrigation Co. v. Worswick*, 187 Cal. 674, 682-83 (1922) (construing statute's use of phrase "local customs, laws and decisions").

The parties have not identified authority directly on point; nor has the court. The court notes, however, that "R.S. 2339 [codified at 43 U.S.C. § 661] and R.S. 2477 [codified at 43 U.S.C. § 932 (repealed 1976)] were enacted as [consecutive sections] of the [1866 Act]." *United States v. Gates of the Mountains Lakeshore Homes, Inc.*, 732 F.2d 1411, 1413 n.4 (9th Cir. 1984). Accordingly, the two statutes should "be read together," *id.* (citing *Winona & St. Peter R.R. Co. v. Barney*, 113 U.S. 618, 625 (1885)), and interpretation of one is "especially strong authority" with respect to the other, *see id.* Interpreting R.S. 2477, the Ninth Circuit has held that "'[a]ny doubt as to the scope of the grant under R.S. 2477 must be

13

resolved in favor of the government,'" *Adams v United States*, 3 F.3d 1254, 1258 (9th Cir. 1993) (quoting *Gate of the Mountain Lakeshore Homes, Inc.*, 732 F.2d at 1413), and that "use of a presumed R.S. 2477 easement through a National Park [is] subject to reasonable regulations," *id.* at 1260 (citing *United States v. Volger*, 859 F.2d 638, 642 (9th Cir. 1988)).

Additionally, "[a]ll uses of [USFS] lands, . . . except those authorized by the regulations governing [exceptions not relevant here] . . . , are designated 'special uses.'" 36 C.F.R. § 251.50(a). "Before conducting a special use, individuals or entities must submit a proposal to the authorized officer and must obtain a special use authorization . . . , unless that requirement is waived . . . ." *Id.* The requirement is waived "if, based upon review of a proposal, the authorized officer determines that . . . [t]he proposed use is not situated in a congressionally designated wilderness area, and is a routine operation or maintenance activity within the scope of the statutory right-of-way for a . . . ditch . . . pursuant to R.S. 2339 . . . ." *Id.* § 251.50(e)(3).

Taking into account all of the foregoing, the court finds plaintiffs' pleading sufficient to survive dismissal. As noted, the plain language of the federal statute allows for the accrual and vesting of rights as recognized and acknowledged by "local" California customs, laws and court decisions; the statute expressly provides in relevant part that "[a]ll . . . preemption . . . shall be subject to any vested and accrued water rights, or rights to ditches . . . ." 43 U.S.C. § 661. Although the language of the cited federal regulations requires submission of a proposal before conducting routine maintenance, 36 C.F.R. §§ 251.50(a), (e)(3), a federal statute trumps a federal regulation, *see Pac. Gas & Elec. Co. v. United States*, 664 F.2d 1133, 1136 (9th Cir. 1981), and the USFS has not shown that the laws of California require prior agency review. Plaintiffs have, therefore, articulated a "cognizable legal theory" supported by sufficient facts, and partial dismissal is improper on the instant record. *Balistreri*, 901 F.2d at 699.

The fifth claim may proceed in this respect.

/////

/////

IV. CONCLUSION

As set forth above, the motion is GRANTED IN PART and DENIED IN PART. Plaintiff's first and second claims are dismissed in their entirety, while the fifth claim is dismissed only insofar as it is premised on the 1891 Act. The remainder of the claims may proceed. Consistent with this order, plaintiffs are directed to file an amended complaint within fourteen days.

IT IS SO ORDERED.

DATED: May 12, 2014.

_____
UNITED STATES DISTRICT JUDGE